**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ORLANDO REDD, JR., | |
| Plaintiff, | |
| v. | Civil Action No.: SAG-21-0455 |
| DIRECTOR GAIL WATTS, *et al.*, | |
| Defendants. | |

**MEMORANDUM**

Orlando Redd, Jr., who is self-represented, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Gail Watts, the Director of Baltimore County Detention Center ("BCDC"), PrimeCare Medical, Inc. and Dr. Zowie Barnes. ECF 1. Redd alleges that Defendants failed to provide him with adequate protection from COVID-19 and that he was exposed to black mold in the shower area at BCDC. *Id.* at 3-4. Redd was housed at BCDC when he filed this action, and now appears to be incarcerated at the Maryland Correctional Training Center.[1]

On September 30, 2022, Defendant Watts filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF 27. This Court notified Redd of the motion and gave him an opportunity to respond. ECF 31. He has failed to do so. No hearing is required. *See* Local Rule 105.6 (D. Md. 2023). For the reasons that follow, Watts's unopposed motion shall be granted.

**Procedural Background**

By Memorandum and Order dated August 1, 2022, summary judgment was granted in favor of Defendants Barnes and PrimeCare Medical, Inc. on Redd's medical care claim, and they

---

[1] *See* https://dpscs.maryland.gov/inmate/search.do?searchType=detail&id=668508766. Last checked July 20, 2023. Redd, for a second time, has not updated his address as Court rules require. Nevertheless, the Clerk will be directed to update Redd's address on the docket.

were dismissed from this action. ECF 21, 22. The Court found that there is no indication that Redd suffers from a serious medical need pertaining to breathing issues and that the Defendants could not be held deliberately indifferent to any such need. ECF 21.

Also on August 1, 2022, Watts's first Motion to Dismiss, or in the Alternative for Summary Judgment, was denied without prejudice and she was directed to respond to the Complaint. ECF Nos. 21, 22. On August 8, 2022, Watts filed an Answer. ECF No. 24. On September 30, 2022, Watts filed the instant second Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF 27.

**Preliminary Motion**

Watts filed a motion to seal two medical record exhibits filed with her motion to Dismiss, or in the Alternative, for Summary Judgment. ECF 28; 29; 30. Some content from the records is referenced in the memorandum of law. ECF 27-1 at 4. Watts has not asked to seal the memorandum of law.

Local Rule 105.11 governs the sealing of all documents filed in the record and states in relevant part that: "[a]ny motion seeking the sealing of pleadings, motions, exhibits or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." The rule balances the public's general right to inspect and copy judicial records and documents, *see Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), with competing interests that sometimes outweigh the public's right, *see In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984). The common-law presumptive right of access can only be rebutted by showing that "countervailing interests heavily outweigh the public interest in access." *Doe v. Pub. Citizen*, 749 F.3d 246, 265-66 (4th Cir. 2014) (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). The right of access "may be restricted

only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'" *Id*. at 266 (quoting *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986)). "[S]ensitive medical or personal identification information may be sealed," although not where "the scope of [the] request is too broad." *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011).

Watts's request to seal two medical record exhibits is narrow in scope and presents a compelling reason, and therefore will be granted.

**Background**

**A. Redd's allegations**[2]

Redd filed his complaint on February 22, 2021. He claims that Defendants failed to take adequate COVID-19 precautions, and also failed to address black mold present at BCDC. ECF No. 1 at 3-4. He states that on December 22, 2020, a "quarantine notice" was put on an inmate's cell door in his segregated housing unit. *Id.* at 3. On December 24, 2020, this same inmate was let out for recreation, and interacted with Redd and other inmates. *Id.* The inmate remained housed in the unit until December 29, 2020, at which time he was removed and isolated from others. *Id.* Redd believes he was personally put at risk of contracting COVID-19 due to these events. *Id.*

Redd also states that inmates did not receive face masks until September 2020, although face masks were provided to correctional officers in March 2020. *Id.* In addition, he was transported from intake to housing units with other inmates, putting him at further risk of infection. *Id.* As of January 4, 2021, Redd had been in restricted housing for 16 days and his unit was still on quarantine after 12 days. *Id.* at 4. He describes improper cleaning of the bathing area, control

---

[2] The Court's August 1, 2022 Memorandum contains a statement of facts which is incorporated herein. ECF No. 21.

3

center door, and bannisters. *Id.* Further, there was black mold all over bathing area walls and he was not able to access cleaning supplies. *Id.*

Although the conditions took "a toll" on his breathing, he was denied "breathing treatments" by correctional staff because he does not have health problems for breathing "in the data base." *Id.* His poor living conditions were not addressed until he made an informal complaint. *Id.* Redd feels as though his health was "jeopardized and taken for granted." *Id.*

**B. Defendant Watts's Response**

Redd was housed at BCDC following his arrest and initial court appearance on February 21, 2020. ECF No. 27-8. Redd was then transferred from BCDC to the Maryland state prison system after he was convicted and sentenced on August 23, 2021. ECF No. 27-11.

Redd was incarcerated at BCDC at the start of the COVID-19 pandemic. Watts filed with her motion a declaration, ECF 27-7, and multiple exhibits[3] ECF 27-2-27-6; 27-8 - 27-31, detailing the safety measures that were put in place at BCDC to address COVID-19 from March 2020 through January 2021. ECF No. 27-7. On March 13, 2020, CDC guidelines regarding COVID-19 were posted in all BCDC housing units. *Id.* at 3. On March 19, 2020, a video about COVID-19 was played during each shift for BCDC inmates. *Id.* On March 25, 2020, BCDC building

---

[3] Watts's first Motion to Dismiss, or in the Alternative, for Summary Judgment was denied without prejudice due to her failure to file the declaration referenced in the motion and to properly identify exhibits referenced in the memorandum of law. ECF Nos. 21, 22. Along with the instant motion, Watts has provided her declaration, yet fails to reference any of the exhibits filed in support of the statements made. ECF No. 27-7. Further, although counsel's memorandum of law now references exhibits by letter, the exhibits have been docketed by number with no indication of the letter of the exhibit, requiring the Court to examine each document to determine which exhibit counsel has referenced. Counsel is advised that exhibits when docketed must include identifiers that reflect the document's content and number, and also must be properly referenced in pleadings to avoid further waste of limited judicial resources.

operations staff began spraying building ventilation systems on a weekly basis and "increased the time" for changing air filters." *Id.*  The first order for masks was placed on March 27, 2020. *Id.*

On April 4, 2020, all staff, contractual employees, and professional visitors entering the BCDC facility were required to have their temperature checked, and only those with temperatures below 100.4 were allowed entry. *Id.* at 4.  On April 8, 2020, spray bottles of disinfectant were placed in the housing units and inmate custodial closets. *Id.*  That same day, Watts sent an email directing all BCDC staff to discontinue the practice of wearing the same pair of gloves when moving from one housing unit to another or from one task to the next. *Id.*

On April 9, 2020, the first shipment of masks arrived at BCDC. *Id.*  Masks were issued to all staff, and anyone entering the facility was required to wear a mask. *Id.*  In addition, inmate workers were required to pass a temperature check and were directed to wear masks while working. *Id.*

On April 10, 2020, the Baltimore County Health Department notified Watts that an inmate from Housing Unit 3P tested positive for COVID-19. *Id.*  According to Watts, this was the first confirmed case at BCDC. *Id.*  Watts immediately sent an email to all BCDC correctional staff to relay the information. *Id.*  Included in Watts's email were her answers to questions and concerns from staff as well as information about new operational changes. *Id.*  On April 12, 2020, BCDC began rolling temperature checks for all BCDC inmates and provided masks to all inmates housed in quarantine units. *Id.* at 5, 6.   On April 13, 2020, face masks were issued to all new inmates upon admission, to be worn at all times while the inmate was in "diagnostic status."[4]  *Id.* at 5.

On April 13, 2020, BCDC implemented additional COVID-19 management steps for new inmates, including new procedures for intake, inmate movement, inmate workers and staff meal

---

[4] As a point of reference, the Governor of Maryland first issued an executive order requiring members of the public to wear face coverings on public transportation and in restaurants and stores on April 15, 2020. ECF 27-15.

preparation, and a modified facility lockdown. *Id.* Due to an initial low supply and high demand, masks initially were issued to inmates that needed to leave the housing unit and building. *Id.* Once BCDC amassed a sufficient supply of masks, masks were provided to the entire inmate population. *Id.*

As of April 13, 2020, new inmates were housed in Housing Unit 4Q, which was placed on lockdown, with only one dorm permitted in the dayroom for exercise on a rotating basis. *Id.* Cleaning supplies were made available between dorm exercise periods for new inmates, and inmates who exercised were directed to clean contact areas. *Id.* at 5-6. All activities, including classification intake interviews, phone calls with the public defender, and bail reviews were to take place in the housing unit utilizing the provided equipment. *Id.* at 6. Once Housing Unit 4Q reached capacity, new inmates were to be housed in Housing Unit 3T, under the same restrictions and requirements. *Id.* On April 13, 2020, access to the Housing Unit 2D dayroom was on a rotating basis so the new and previously housed inmates did not have access at the same time. *Id.*

On May 29, 2020, correctional staff were issued cloth masks. *Id.* On June 23, 2020, the 3T Housing Unit was opened for new inmates. Staff was directed not to place new inmates with inmates already housed in 3T, or allow both groups of inmates to walk together. *Id.* On August 21, 2020, inmate family and friend visitation was cancelled indefinitely. *Id.* On August 26, 2020, new inmates were again placed in Housing Unit 3T, as Housing Unit 4Q was at capacity for quarantine intakes. *Id.* at 7. On September 3, 2020, all inmates were issued surgical masks. *Id.* On September 8, 2020, face shields were made available to correctional staff. *Id.* On September 15, 2020, all inmates were issued cloth masks. *Id.*

On December 9, 2020, due to the rise in positive COVID-19 cases in the community and based on guidance from the Baltimore County Health Department, restrictive procedures were put in place regarding BCDC staff meal breaks. *Id.* On December 22, 2020, additional restrictions

6

were implemented, including limiting the number of staff working on each unit; limiting the assignments of staff who were not N-95 mask qualified; and directing shift supervisors to notify BCDC Administration each time a staff member entered a sick request related to COVID-19. *Id.* On January 15, 2021, the facility offered COVID-19 vaccinations to BCDC staff and inmates. *Id.* Medical records note that Redd refused the COVID-19 vaccine on January 8, 2021, and again on January 18, 2021. ECF Nos. 27-1 at 4; 29; 30.

## Standard of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The court may "consider documents attached to the complaint, *see* Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic[.]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citation omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere

existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

Watts's Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a).  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment.  *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998).

Because Watts filed this motion styled as a motion to dismiss, or in the alternative, for summary judgment, Redd was on notice that the Court could treat the motion as one for summary judgment and rule on that basis.  Accordingly, the Court will review the claims under the Rule 56(a) standard and will consider the exhibits Watts filed in support of the motion.

## Discussion

Watts asserts that she is entitled to summary judgment because 1) Redd is no longer housed at and subject to conditions at BCDC, and he does not claim that he is now suffering from any

medical condition as a result of the prior exposure; 2) Watts was not deliberately indifferent to Redd's serious medical needs and took reasonable measures to protect all individuals housed at BCDC from COVID-19; and 3) Redd's claims that the unsanitary conditions at BCDC placed him at risk for infection are not sufficient to demonstrate that he has a serious medical condition.

Construed liberally, Redd's contentions regarding the management of the COVID-19 virus and the presence of black mold raise claims pertaining to conditions of confinement and failure to protect. The Court does not construe Redd's claims as the failure to provide adequate medical treatment.[5]

Redd was a pretrial detainee housed at BCDC during the relevant time. ECF Nos. 27-8; 27-11. Accordingly, his claims are analyzed under the Fourteenth Amendment. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992). "The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment." *Barnes v. Wilson*, 110 F.Supp.3d 624, 629 (D. Md. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Notably, it "proscribes more than physically barbarous punishments" and "embodies" the "'concepts of dignity, civilized standards, humanity, and decency . . .'" *Estelle*, 429 U.S. at 103 (citation omitted). In short, the

---

[5] Although Redd states that he was denied "breathing treatments," he does not provide anything more than this general allegation. ECF No. 1 at 3-4. *See also*, *Memorandum*, ECF No. 21 at 11-12 (the record does not show that Redd complained of breathing difficulties, or requested medical care related to breathing difficulties).

Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Additionally, the protection provided by the Eighth Amendment compels prison officials "to take reasonable measures to guarantee the safety of . . . inmates." *Whitley v. Albers*, 475 U.S. 312, 319–20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).

There is both an objective and a subjective prong that must be established in claims of cruel and unusual punishment in conditions of confinement and failure to protect. The objective prong requires the prisoner to "'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka*, 71 F.3d at 166 (quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993)); *accord De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Thus, "a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year" violates the Eighth Amendment, even if "the complaining inmate shows no serious current symptoms." *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993).

The subjective prong requires that the defendant had a sufficiently culpable state of mind. There must be evidence of deliberate indifference, in that a known, excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (applying the deliberate indifference standard to conditions of confinement claims); *see also Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 107 (4th Cir. 2017). "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). To survive summary judgment, Plaintiff must show facts sufficient for a reasonable factfinder to conclude that (1) he was exposed

to a substantial risk of serious harm and (2) the defendants knew of and disregarded that risk. *Thompson*, 878 F.3d at 107 (citing *Farmer*, 511 U.S. at 834, 837–38) (internal quotations omitted).

**COVID-19 Claims**

In assessing Redd's COVID-19 claims, it is necessary to understand the context in which they took place. On March 11, 2020, COVID-19 was declared a global pandemic by the World Health Organization. *See Seth v. McDonough*, 461 F. Supp. 3d 242, 247 (D. Md. 2020).[6] The country was suddenly plunged into "the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d at 223. Redd's incarceration at BCDC began on February 21, 2020, less than three weeks before the declaration of the global pandemic.

In the context of the COVID-19 pandemic, courts have found that a plaintiff "must provide more than generalized allegations that the [defendants] ha[ve] not done enough to control the spread" of COVID-19. *Neale v. Hogan*, JKB-20-1219, , at *12 (D. Md. July 6, 2023) citing *Blackwell v. Covello*, No. 2:20-CV-1755 DB P, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021); *see also Hope v. Warden*, 972 F.3d 310, 330 (3rd Cir. 2020) (rejecting petitioners' arguments that exposure to COVID-19 was per se unconstitutional and that the government must entirely eliminate their risk of exposure in order to comply with constitutional mandates).

Courts that have considered allegations similar to those presented in Redd's Complaint have concluded that they do not support a claim of deliberate indifference. *See e.g.*, *Neale*, 2023 WL 4373259, at *13 (granting summary judgment to defendants because the measures taken by

---

[6] The court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201. Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *See Naming the Coronavirus Disease and the Virus that Causes It*, WORLD HEALTH ORG., https://bit.ly/2UMC6uW (last visited July 20, 2023).

prison authorities to ameliorate the risks of spreading the virus demonstrate they were not deliberately indifferent); *Knight v. Watts*, ELH-21-56, 2022 WL 80637, at *13 (D. Md. Jan. 6, 2022) (granting summary judgment to defendants because efforts at mitigating spread of COVID-19 demonstrated they were not deliberately indifferent); *Reinhardt v. Hogan,* DKC-20-1011, 2021 WL 82894, at *6 (D. Md. Jan. 11, 2021) (dismissing complaint for failure to state a claim regarding prison's efforts to fight COVID-19 where Plaintiff failed to show injury).

While Redd may be able to satisfy the first prong of an Eighth Amendment claim and demonstrate that COVID-19 poses significant health risks, he has not demonstrated the second subjective prong. To the contrary, the record clearly shows that Watts was aware of the risks of COVID-19 and took measures to ameliorate the risks of spreading the virus. Safeguards such as the ones in place at BCDC have been upheld as a reasonable response to the COVID-19 threat.

In *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020), the Sixth Circuit noted that the COVID-19 virus created "a substantial risk of serious harm," *id.* at 840, but reversed the lower court's grant of preliminary injunctive relief because Defendants had implemented safeguards including screening inmates, staff, and visitors for symptoms; isolating and quarantining inmates exposed to the virus; implementing limitations on movements into and within the facility; testing of inmates and staff; mandating extensive cleaning efforts; providing access to cleaning supplies; educating inmates and staff about the virus; and providing PPE to both staff and inmates, which constituted evidence that prison officials were not deliberately indifferent to the risk posed by COVID-19. *Id.* at 841. The court concluded that "while the harm imposed by COVID-19 on inmates . . . 'ultimately [is] not averted,' the [Bureau of Prisons] has 'responded reasonably to the risk' and therefore has not been deliberately indifferent to the inmates' Eighth Amendment rights." *Id.*; *see also Dove v. Gang*, Civil Action No. DKC-20-1145, 2020 WL 4262269, at *3 (D. Md. July 24, 2020) (discussing *Wilson*, 961 F.3d at 839, 841).

Numerous safeguards were implemented at BCDC, including the education of inmates and staff regarding COVID-19; frequent cleaning of ventilation systems and common areas; distribution of cleaning products; auditing of protocols; distribution of masks and other personal protective equipment; social distancing of staff and inmates; routine testing of inmates and staff; and, eventually, offering COVID-19 vaccines to both staff and inmates.

The ongoing protective measures enacted at BCDC were wide-ranging, and the facility clearly took steps to decrease the dangers of spreading COVID-19. Even assuming, *arguendo*, that more could have been done, and that individual staff on occasion violated the protective policies put into place, that is not the measure of an Eighth Amendment claim. "Neither the resultant harm of increasing infections nor the impossibility of achieving six-foot social distancing in a jail environment establishes that the defendants acted with 'subjective recklessness as used in the criminal law.'" *Swain v. Junior*, 961 F.3d 1276, 1287 (11th Cir. 2020) (quoting *Farmer*, 511 U.S. at 839–40 (adopting subjective recklessness as used in the criminal law as a test for deliberate indifference under the Eighth Amendment).

Given all of the safeguards put in place, which represent a reasonable response to the COVID-19 threat, Redd cannot prevail on his claim of cruel and unusual punishment as it pertains to his COVID-19 claim.

**Black Mold**

Redd states only generally that his health was "jeopardized" by the presence of black mold on the bathing area walls. ECF No. 1 at 4. He does not provide further information and the record does not reflect that he suffered harm from mold.

The condition that Redd describes does not rise to the level of a constitutional violation. He has not established either the objective or subjective standard necessary to proceed with this claim. This is particularly true given the limited area of the facility in which he alleges the mold

was present, his limited exposure to the mold, and the lack of any allegations that Redd was harmed. The Court concludes that Redd cannot prevail on his claim pertaining to black mold.

## Conclusion

There are no genuine disputes of material fact and Watts is entitled to summary judgment as a matter of law. Watts's motion, construed as a motion for summary judgment, shall be granted. The Motion to Seal shall also be granted.

A separate Order follows.

July 25, 2023 /s/
Date Stephanie A. Gallagher
United States District Judge